IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BEL AIR PLAZA LIMITED PARTNERSHIP :
:
:
v. : Civil No. CCB-14-2533
:
:
ROSS DRESS FOR LESS, INC. :
:

## MEMORANDUM

Now pending is Bel Air Plaza Limited Partnership's motion for attorneys' fees and expert witness costs. (Mot. Attorneys' Fees, ECF No. 38). Oral argument is not necessary to resolve the issues. *See* Local R. 105.6 (D. Md. 2014). The court will assume familiarity with this case, and will recount only those facts necessary to resolve the pending motion.[1]

This dispute arises from water damage in a store leased by Ross Dress for Less, Inc. ("Ross") from Bel Air Plaza Limited Partnership ("Bel Air"). Bel Air filed a declaratory judgment action in the Circuit Court for Harford County, Maryland. (Compl., ECF No. 2). Ross timely removed the suit to this court and filed a counterclaim. (Answer & Countercl., ECF No. 7). Bel Air moved for summary judgment, which this court granted after allowing additional discovery to proceed on several late-produced documents. (Order, ECF No. 33; Memorandum, ECF No. 36; Order, ECF No. 37).

In granting summary judgment, the court held that Bel Air is a "prevailing party" entitled to attorneys' fees and costs pursuant to section 20.4.2 of the lease agreement between the two parties. (Memorandum 12, ECF No. 36). Bel Air timely filed a motion for attorneys' fees and costs. (Mot. Attorneys' Fees, ECF No. 38). Ross contests the fee request as being "vague,

---

[1] More detailed background information can be found in the court's opinion granting Bel Air's motion for summary judgment. (Memorandum, ECF No. 36).

excessive, duplicative and otherwise unreasonable." (Opp'n Mot. Attorneys' Fees 1, ECF No. 41). For the reasons that follow, Bel Air's motion will be granted with some reductions to the amount requested.

## ANALYSIS

### I.     Standard of Review

Maryland law[2] provides an exception to the "American Rule"[3] when a contract provision provides for an award of attorneys' fees. *See Myers v. Kayhoe*, 391 Md. 188, 207 (2006) ("Contract provisions providing for awards of attorney's fees to the prevailing party in litigation under the contract generally are valid and enforceable in Maryland."). The award, however, is limited to reasonable fees and costs. To receive attorneys' fees, the prevailing party must provide "detailed records" that specify "the services performed, by whom they were performed, the time expended thereon, and the hourly rates charged." *Rauch v. McCall*, 134 Md. App. 624, 639 (2000) (citation omitted). "The burden is on the party seeking recovery to provide the evidence necessary for the fact finder to evaluate the reasonableness of the fees." *Atl. Contracting & Material Co. v. Ulico Cas. Co.*, 380 Md. 285, 316 (2004) (citation omitted). The court "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional Conduct ("MRPC")] as the foundation for analysis of what constitutes a reasonable fee when the court awards fees based on a contract entered by the parties." *Monmouth Meadows Homeowners Ass'n, Inc. v. Hamilton,* 416 Md. 325, 336–37 (2010).[4] "The reasonableness of attorneys' fees is

---

[2] As noted in the court's previous opinion, neither party disputes that Maryland law governs this case. (Memorandum 8 n.3, ECF No. 36).

[3] Under the American Rule, parties bear responsibility for their own attorneys' fees.

[4] When evaluating the amount awarded pursuant to a contract provision, the court does not conduct a traditional lodestar analysis. *Monmouth Meadows,* 416 Md. at 333–36; *see also Pennington Partners, LLC v. J-Way Leasing, LLC*, Civil No. RDB-11-0972, 2012 WL 527661, at *2 (D. Md. Feb. 17, 2012). Cases applying the traditional lodestar analysis are instructive,

2

generally a factual determination within the sound discretion of [the court]." *Atl. Contracting*, 380 Md. at 316 (internal quotation mark and citation omitted).

Rule 1.5(a) provides non-exclusive "factors to be considered in determining the reasonableness of a fee":

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

MRPC 1.5(a). These factors need not be considered separately; rather, the court need only "utilize[ Rule 1.5(a)] as its guiding principle in determining reasonableness." *Monmouth Meadows,* 416 Md. at 340 n.13. The "court also may consider, in its discretion, any other factor reasonably related to a fair award of attorneys' fees." *Id.* at 337–38. Appendix B to the Local Rules provides a guideline in the form of ranges of fees based on years of experience. *See* Local R., App. B: Rules and Guidelines for Determining Attorneys' Fees in Certain Cases (D. Md. 2014). While the court is not bound by these ranges, it generally presumes a rate is reasonable if it falls within the guidelines. *See, e.g.*, *Roger E. Herst Revocable Trust v. Blinds to Go (U.S.) Inc.*, Civil No. ELH–10–3226, 2011 WL 6444980, at *5 (D. Md. Dec. 20, 2011).[5]

**II.     Discussion**

Bel Air seeks attorneys' fees pursuant to Section 20.4.2 of the lease, which states:

---

however, because many of the applicable factors are also found in Rule 1.5. *See Roger E. Herst Revocable Trust*, 2011 WL 6444980, at *2 n.5.

[5] Unpublished cases are cited only for the soundness of their reasoning, not for any precedential value.

> 20.4.2 <u>Actions Between the Parties</u>. If either party commences an action against the other party arising out of or in connection with this Lease, or in the event of an Alternative Dispute Resolution proceeding between the parties relating to this Lease, the prevailing party shall be entitled to have and recover from the losing party reasonable attorneys' fees, costs of suit, investigation costs, expert witness costs (whether testifying as an expert or fact witness) and discovery costs, including costs of appeal.

(Lease 58 § 20.4.2, ECF No. 38-2). Specifically, Bel Air requests $110,055.67 in attorneys' fees and costs, as well as $8,154.76 in expert witness expenses,[6] for a total of $118,210.43. Ross challenges this fee request on several grounds, which the court will address in turn.

1. **Compliance with Local Rule 109.2**

Ross contends that "Bel Air has failed to provide a sufficiently detailed description of its work" in violation of Local Rule 109.2. In the "Task" section of its fee spreadsheet, entries include descriptions such as "Case Development / Strategy," "Research," and "Analyze Discovery Responses." While more could have been provided, the level of detail in Bel Air's fee spreadsheet satisfies Local Rule 109.2, particularly considering all entries are dated and grouped by phase of litigation (including, where relevant, which motion or pleading corresponds to each entry), thereby providing additional context for evaluating reasonableness.

2. **Hourly Rates**

Ross challenges the reasonableness of the hourly rates of Harris W. Eisenstein and Benjamin Rosenberg, Bel Air's primary attorneys on this case. It also contends Bel Air did not provide sufficient information to evaluate the reasonableness of fees attributed to Hilary J. O'Connor, Richard L. Adams, Adam Scharff, and Peter Coolbaugh.

Mr. Eisenstein billed an hourly rate of $265 from June 2014 until the end of that year. (Reply Mot. Attorneys' Fees, Ex. A, Fee Spreadsheet, ECF No. 43-1). From January 2015 to

---

[6] Ross does not challenge Bel Air's expert witness expenses.

present, he has billed an hourly rate of $290. *Id.* Mr. Eisenstein was admitted to the Maryland Bar on December 14, 2010. Appendix B provides the presumptively reasonable range of $125-225 for attorneys admitted to the bar for less than five years. Mr. Eisenstein's 2014 rate, while supported by the affidavits of Mr. Rosenberg (an interested party) and Mr. Sandler, is $40 per hour more than the highest end of the guideline range. His 2015 rate is $65 per hour more than the highest end of the guideline range. The court will reduce Mr. Eisenstein's rate to $225 for all hours billed prior to December 14, 2015. A $225 hourly rate is reasonable in light of his successful and largely efficient handling of this case. For all time billed after December 14, 2015, Mr. Eisenstein's rate of $290 falls within the applicable guideline range of $165-300 and is reasonable.

Ross also challenges the hourly rate of Benjamin Rosenberg. Mr. Rosenberg bills an hourly rate of $495. *Id.* He was admitted to the Maryland Bar on July 1, 1968. The guideline range for attorneys with more than twenty years' experience is $300–475. Mr. Rosenberg has over forty years of experience. He efficiently and successfully litigated this case, and his rate is supported by Mr. Sandler's affidavit. The requested rate of $495 will be awarded.

Ross also requests the court cut all hours billed by Hilary J. O'Connor, Adam Scharff, Richard L. Adams, and Peter Coolbaugh because Bel Air did not specify whether these individuals were attorneys or paralegals, thus preventing Ross and this court from evaluating the reasonableness of their fees.[7] While it would have been helpful for Bel Air to have provided this information in its initial motion, it did so in its reply brief.[8] Ms. O'Connor is an attorney with

---

[7] Ross did not request exclusion of Nathan D. Adler's time. Mr. Adler has over twenty years' experience and bills an hourly rate of $375, which is well within the applicable $300-475 guideline range. His fee is reasonable.

[8] Ross has not sought leave to file a surreply challenging the reasonableness of these fees in light of the delayed disclosure of the individuals' professional occupations. The court is satisfied,

over 19 years' experience. Her hourly rate of $355 is within the applicable guideline range of $275-425. *Id.* Additionally, she was Bel Air's client contact at Rosenberg Martin Greenberg, LLP. Her rate is reasonable. Mr. Adams and Mr. Coolbaugh are paralegals. Each billed an hourly rate of $160. *Id.* This is $10 greater than the guideline range of $95-150 for paralegals and law clerks. Bel Air provides no information (e.g. years of experience) that would justify an award in excess of the guideline range. Mr. Adams and Mr. Coolbaugh's hourly rate will be reduced to $150. Mr. Scharff, a law clerk, billed a total of 1.7 hours at the presumptively reasonable hourly rate of $150. *Id*. While billing clients for a law clerk's time may become unreasonable, Mr. Scharff's fee comprises an insignificant fraction of Bel Air's total expenses. The requested rate of $150 will be awarded for his work.

   3. **Efficiency Concerns**

Ross argues for a reduction in Bel Air's fees due to overstaffing, inefficiency, and duplication of efforts. Specifically, it alleges Mr. Rosenberg and Mr. Eisenstein were inefficient in billing 46.3 hours for preparing a Reply brief to Ross's Opposition to Bel Air's Motion for Summary Judgment. Even in light of the increased efficiency expected from attorneys charging the relatively high rates attributed to Mr. Rosenberg and Mr. Eisenstein, 46.3 hours is not an unreasonable amount of time considering the voluminous (and oftentimes technical) record in this case, the quality of Bel Air's briefing, and the successful outcome of its summary judgment motion.

Ross also takes issue with 6.3 hours billed for Bel Air's Opposition to Ross's Motion to Extend the Filing Deadline (6 hours attributed to Mr. Eisenstein and 0.3 hours attributed to Mr.

---

however, that Bel Air has disclosed sufficient information to allow the court to assess the reasonableness of these fees. Further, the number of hours billed by these individuals is relatively insignificant.

Rosenberg).[9] In light of the enhanced efficiency expected from Mr. Eisenstein, the short length of the filing, and the relative simplicity of the facts and law necessary for the opposition, Mr. Eisenstein's time will be reduced to 3 hours. Mr. Rosenberg only spent 0.3 hours reviewing Mr. Eisenstein's work; that reasonable amount will not be reduced.

Ross also identifies three dates on which Mr. Rosenberg and Mr. Eisenstein purportedly billed time on the same task. Namely, they point to entries from September 24, 2014, for "Case Development / Strategy / Conference with Client and Expert"; March 24, 2015, for "Prepare for and Attend Telephonic Hearing on Discovery Motion / Communication with Client"; and March 30, 2015, for "Discovery Conference / Review Production Set / Communications with Client." While Appendix B provides that only one attorney shall be compensated for attending hearings and client conferences, there are exceptions to those rules, such as when the meeting is "of defined duration held for the purpose of work organization, strategy, and delegation of tasks in cases where such conferences are reasonably necessary for the proper management of litigation." Local R., App. B: Rules and Guidelines for Determining Attorneys' Fees in Certain Cases (D. Md. 2014). Here, there is minimal overlap: 3.3 hours, according to Ross. This suggests that Bel Air's counsel efficiently litigated this case. First, the September 24 entries reflect a strategy meeting, which justifies compensating two attorneys. Additionally, the two overlapping entries pertaining to discovery presumably necessitated Mr. Eisenstein and Mr. Rosenberg's presence. Strategic decisions have to be made regarding discovery. Billing for a few hours of strategic discussions between the two primary attorneys on a case is reasonable, and these hours will not be reduced.

---

[9] Ross claims Bel Air's counsel billed 8.1 hours on its Opposition to Ross's Motion to Extend the Filing Deadline. Bel Air's fee spreadsheet only reflects 6.3 hours of work on the Opposition. (Fee Spreadsheet Entries dated May 19, 2015 through May 21, 2015, ECF No. 43-1).

The court will make a sua sponte reduction to the hours billed for litigating the fee petition. Bel Air's counsel spent approximately 61.8 hours, for a total of $19,567.50, on its attempt to recover attorneys' fees. This accounts for over 18 percent of the total hours billed by Bel Air's counsel. While the fee petition was contested, the legal questions involved were not difficult, making 18 percent a disproportionate percentage in light of the complex technical issues involved in litigating the merits of this case. *Cf. E.E.O.C. v. Serv. News Co.*, 898 F.2d 958, 966 (4th Cir. 1990) ("The expenditure of over twenty percent of the claimed time on fee preparation would appear to be unreasonable under the circumstances."). Counsel could have litigated this stage more efficiently. Additionally, included in this time is 12.4 hours billed by Mr. Eisenstein for "Draft Fee Petition Spreadsheet." This task could have been completed by a paralegal or legal assistant. It is unreasonable to bill a client at an experienced attorney's full rate for this kind of administrative work. In light of this, and the excessive time spent litigating the fee petition, these 12.4 hours will be excluded from Bel Air's award.

**4.  Fee Amount in Relation to Amount at Issue in the Litigation**

Ross argues for a downward adjustment because Bel Air's fees and costs totaling $118,210.43 are disproportionate to the amount at issue in the litigation, $176,966. Ross reached this amount based on a repair estimate provided by United Lynn-Con Corporation. (Opp'n Mot. Summ. J., Ex. 8, Letter Dated April 7, 2014, ECF No. 19-13). This argument carries little weight. The contested issue of liability for floor repairs conceivably could affect the parties' positions on future disputes arising from the lease agreement. Further, Ross paid comparable fees to its counsel. Ross's counsel billed a total of $75,846 for the time periods of May 1, 2014,

through September 30, 2014, and March 1, 2015, through June 30, 2015.  Bel Air, during the same time periods, billed a total of $67,978.76.[10]  No reduction is warranted.

## CONCLUSION

The court will grant Bel Air's motion.  Adjusting for the reductions noted above, the court will award Bel Air $94,943.67 in attorneys' fees and costs.  It will also award $8,154.76 in expert witness expenses, for a total of $103,098.43.

A separate order follows.

June 23, 2016  
Date

/S/  
Catherine C. Blake  
United States District Judge

---

[10] Accounting for the court's reductions, this amount drops to $58,241.26.